IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY TENON, | : | CIVIL ACTION NO. **1:12-CV-1278** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WILLIAM DREIBELBIS, *et al.*, | : | |
| | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

Currently before the Court are two Motions for Summary Judgment (Docs. 46, 50) filed separately by the two Defendants remaining in this action, William Dreibelbis and Ronald Long. Both Motions have been fully briefed and are now ripe for review by the Court. For the reasons that follow, it is recommended that both Motions for Summary Judgment be **GRANTED**.

## I.    **BACKGROUND.**

On July 3, 2012, *pro se* Plaintiff Anthony Tenon, an inmate at SCI-Smithfield, Huntingdon , PA, filed this instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also filed a Motion for Leave to Proceed *in forma pauperis* on this same date. (Doc. 2).

In his original Complaint, Plaintiff alleged Eighth Amendment delay and denial of medical care claims regarding his fractured jaw condition against the following: SCI-Smithfield Defendants: William Dreibelbis, Corrections Health Care Administrator ("CHCA"); Ronald Long, Medical Doctor; Josh Mahuut ("P.A."); Sean Tyson, P.A.; and Dr. Agawal, Medical Doctor. (Doc. 1, p. 2).    Plaintiff attached Exhibits to his original Complaint, Exs. A-G.        On July

24, 2012, the court screened Plaintiff's original Complaint as required under the Prison Litigation Reform Act, and issued a Report and Recommendation.  (Doc. 8).  On August 13, 2012, while our Report and Recommendation was pending, Plaintiff filed an Amended Complaint.  (Doc. 10).    Thus, in an Order dated August 15, 2012, the Court rejected our Report and Recommendation as Moot on the basis that Plaintiff's Amended Complaint superceded his original Complaint.  (Doc. 11).    The Court also remanded the case to the undersigned for further proceedings, including screening Plaintiff's  Amended Complaint.

In his Amended Complaint, Plaintiff again alleged Eighth Amendment delay and denial of medical care claims regarding the treatment for a fractured jaw against the following SCI-Smithfield Defendants: William Dreibelbis, CHCA; Ronald Long, Medical Doctor; Josh Mahuut, P.A.; Sean Tyson, P.A.; and Dr. Agawal, Medical Doctor.  (Doc. 10, p. 2).  Plaintiff also stated that he was raising state law tort claims and urged the court to exercise of supplemental jurisdiction over these claims under 28 U.S.C. §1367.

The court screened Plaintiff's Amended Complaint (Doc. 10), and issued a Report and Recommendation on November 19, 2012, recommending the dismissal of several claims.  (Doc. 20).  No objections were filed.  Thus, our Report and Recommendation was adopted in an Order dated December 17, 2012.  (Doc. 23).

Discovery in this case closed on May 24, 2013.  (Doc. 42).  In June 2013, the remaining Defendants William Dreibelbis, CHCA and Ronald Long, Medical Doctor moved for Summary Judgment within three days of one another. On June 21, 2013, Defendant Long filed a motion for summary judgment together with supporting documents.  (Docs. 46-49).  On June 23, 2013,

Defendant Dreibelbis filed a Motion for Summary Judgment together with supporting documents. (Docs. 50-58). On July 16, 2013, Plaintiff filed briefs and counter-statements of facts in opposition to both Motions. (Docs. 60-63).

Plaintiff's only remaining claims involve allegations of Eighth Amendment delay and denial of medical care against Defendants Long and Dreibelbis. With respect to Defendant Long, Plaintiff alleges that he was denied medical care when Defendant Long did not respond to two inmate requests slips submitted on August 5 and August 19, 2010. With respect to Defendant Dreibelbis, Plaintiff alleges that he was denied medical care by Defendant Dreibelbis' failure to provide his prescribed liquid diet, and Defendant Dreibelbis unreasonably delayed his transfer to another institution for surgery.

## II.    SUMMARY JUDGMENT STANDARD.

Defendants Long and Dreibelbis move for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a

genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, *supra*, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, supra,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Conrail*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or

shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

### III.    STATEMENT OF UNDISPUTED MATERIAL FACTS.

Middle District Local Rule 56.1 requires that, "[a] motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D.Pa. L.R. 56.1.  This statement must include references to the parts of the record which support each paragraph. *Id.*

In order to properly respond to the moving parties' statements of material facts, Plaintiff's counter-statement must, "include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth" in the moving party's statement. *Id.*  Like the movant's statement, the counter-statement must also include references to the parts of the record that support the statements. M.D.Pa. L.R. 56.1.  Local Rule 56.1 does not mandate that the non-movant file his *own* statement of material facts, rather it instructs the non-moving party to *respond* to the movants' statement. *Sash v. Hogsten*, No. 1:07-CV-475, 2009 WL 249649, *2 (M.D.Pa. Feb. 2, 2009).  Courts may treat a *pro se* complaint made under penalty of perjury as an affidavit in opposition of a motion for summary judgment if the allegations are specific and based on personal knowledge.  *See Boomer v. Lewis*, No. 06-CV-850, 2009 WL 2900778, *2 n.4 (M.D.Pa. Sept. 9, 2009), *aff'd*, 2013 WL 4505455 (3d Cir. Aug. 26, 2013).  "All material facts set forth in the statement required to be served by the moving party will be deemed

admitted unless controverted by the statement required to be served by the opposing party."
M.D.Pa. L.R. 56.1.

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Sanders v. Beard,* No. 09–CV–1384, 2010 U.S. Dist. LEXIS, *15 (M.D.Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris,* No. 02–CV–01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D.Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

In the instant matter, Plaintiff's statements of material facts, filed in opposition of Defendants' motions, appear to be his *own* statement of material facts rather than a response to those filed by Defendants.  For example, Plaintiff's statement of facts  in opposition to Defendant Long's motion for  summary judgment contains seven (7) paragraphs while Defendant Long's contains fourteen (14).  Further, Plaintiff's statement of material facts opposing Defendant Dreibelbis' motion (Doc. 63) fails to cite *any* evidence in the record in support of the statement and only contains nine (9) paragraphs in response to Defendant Dreibelbis' twenty-three paragraph statement.  Under Local Rule 56.1 all facts contained in Defendants' statements of material facts could be deemed admitted, the court may, in the alternative, deem admitted only those facts from Defendants' statements that are not contradicted by Plaintiff's own statement.  *Dreibelbis v. Young*, No. 4:06-CV-2055, 2007 WL 4344120, *2 (M.D.Pa. Dec. 10, 2007), *aff'd*, 351 Fed. Appx. 711 (3d Cir. 2009).  Guided by these principles, we set forth the material facts as follows:

At all times relevant to this action, Plaintiff was in the custody of the Commonwealth of Pennsylvania Department of Corrections (DOC), housed at the State Correctional Institution at Smithfield (SCI-Smithfield). (Doc. 58, ¶¶1-2). Prior to his injury, Plaintiff was classified as a brittle diabetic. (Doc. 58, ¶19). During the relevant time period, he reported to the SCI-Smithfield medical department two to three times daily to receive insulin injections. (Docs. 49 ¶9; 58, ¶19).

On July 16, 2010, Plaintiff injured his jaw when he fell after losing consciousness in his prison cell.[1] (Docs. 49, ¶9; 58, ¶9). On the same day, Plaintiff was examined by P.A. Sean Tyson[2]. (Doc. 49, ¶3). A few days later Plaintiff was x-rayed, and re-examined by P.A. Josh Mahuut[3]. (Doc. 49, ¶4). Mr. Mahuut informed Plaintiff that he had fractured the right side of his jaw and prescribed that Plaintiff be provided with a "soft diet." (Docs. 49, ¶5, 55). Approximately one week later he was seen by Doctor Agawal, who recommended that Plaintiff's jaw be surgically repaired. (Doc. 49, ¶6). At some point between July 16, 2010 and August 24, 2010, Plaintiff was also examined by a dentist. (Doc. 49, ¶8). On August 24, 2010,

---

[1]The actual dates cited by Plaintiff in his pleadings and at deposition differ from those dates reflected in his medical records. However, the parties agree that these events transpired over a four to five week period spanning from the date of Plaintiff's injury to his transfer to SCI-Pittsburgh for surgery. Therefore, any dispute over the exact dates of medical service do not constitute a genuine issue of material fact for the purposes of summary judgment.

[2]Mr. Tyson was a Defendant named in Plaintiff's Amended Complaint. (Doc. 10). Plaintiff's claims against Mr. Tyson were subsequently dismissed. (Docs. 20, 23).

[3]Mr. Mahuut was a Defendant named in Plaintiff's Amended Complaint. (Doc. 10). Plaintiff's claims against Mr. Mahuut were subsequently dismissed. (Docs. 20, 23).

three weeks after Dr. Agawal's recommendation, Plaintiff was transferred to the State Correctional Facility at Pittsburgh (SCI-Pittsburgh) where he was scheduled to have surgery at the University of Pittsburgh Hospital.[4]  (Docs. 49, ¶7; 57).

On August 19, 2010, Plaintiff filed inmate Grievance No. 332147-10.  (Doc. 58, ¶22). In this Grievance Plaintiff alleged that the medical staff at SCI-Smithfield failed to provide prompt medical treatment for the jaw fracture he sustained on July 16, 2010.  (Doc. 1, Ex. E). Plaintiff appealed this grievance to final review; his claims were found to be meritless.  (Doc. 1, Ex. G).

## A.  Defendant Long.[5]

Prior to his transfer to SCI-Pittsburgh, Plaintiff submitted inmate request slips to Defendant Doctor Long on August 5, 2010 and on August 19, 2010.  (Doc. 49 ¶10). In the August 19, 2010 request slip, Plaintiff alleged that the SCI-Smithfield medical staff was intentionally ignoring his requests for medical treatment.  (Doc. 40, ¶12).

At deposition, Plaintiff admitted that he has no evidence that Defendant Long took any action to delay Plaintiff's transfer for surgery.  (Doc. 49, ¶12).  Plaintiff also testified that he did not expressly name Defendant Long in the inmate grievance he filed in connection with the action.  (Doc. 49, ¶14).

---

[4]At deposition Plaintiff testified that he was transferred to SCI-Pittsburgh on August 19, 2010, his move record reflects that he was transferred on August 24, 2010.  (Doc. 57).

[5]Though not corroborated by Defendant Long's Statement of Material Facts (Doc. 49), in his Amended Complaint Plaintiff identifies Defendant Long as a Physician who is a member of SCI-Smithfield medical staff.  (Doc. 10, ¶5, 8).

**B. Defendant Dreibelbis.**

At all times relevant to this action, Defendant Dreibelbis was employed by SCI-Smithfield as a Corrections Health Care Administrator (CHCA). (Doc. 58, ¶3). As a CHCA, Defendant Dreibelbis was responsible for the administrative operation of the SCI-Smithfield Health Care Department. (Doc. 58, ¶4). His specific responsibilities included, ensuring compliance with DOC policy, and monitoring contractual compliance between the DOC and Corizon[6]. *Id.* In his capacity as a CHCA, Defendant Dreibelbis did not supervise doctors or physicians assistants, and was not responsible for overseeing and approving the findings and recommendations of doctors and physicians assistants regarding treatment, medication, or diet. (Doc. 58, ¶5-6). Defendant Dreibelbis did not make medical decisions involving inmates. (Doc. 58, ¶7). Further, Defendant Dreibelbis was not responsible for scheduling inmate surgeries or outside consultations. (Doc. 58, ¶21). At all times relevant to this action, the Corizon Clinical Coordinator was responsible for approving all medical recommendations and scheduling surgeries. (Doc. 58 ¶8, 21).

In his capacity as a CHCA. Defendant Dreibelbis was tasked with responding to Plaintiff's Grievance No. 332147-10. On September 10, 2011, Defendant Dreibelbis responded to Plaintiff's grievance. (Doc. 1, Ex. E). In his response Defendant Dreibelbis rejected Plaintiff's grievance because he determined that Plaintiff was cared for appropriately and in a timely manner. *Id.*

---

[6]Corizon is a company that contracts with the Department of Corrections for medical services. (Doc. 58, ¶4).

## IV.    DISCUSSION.

In this case, Plaintiff complains that the Defendant prison officials violated his rights under the Eighth Amendment to the United States Constitution by acting with "deliberate indifference" towards his serious medical needs when he fractured his jaw.  With respect to Defendant Long Plaintiff alleges that he denied Plaintiff's requests for medical treatment and ignored his requests for stronger pain medication.  With respect to Defendant Dreibelbis, Plaintiff alleges that he did not approve Plaintiff's prescribed soft diet and unreasonably delayed Plaintiff's transfer to SCI-Pittsburgh for surgery.

### A.    Defendant Long's Motion for Summary Judgment.

In his motion, Defendant Long argues that he is entitled to the grant of summary judgment for two reasons.  First, he argues that Plaintiff has failed to exhaust any administrative remedy with respect to his claim against Defendant Long prior to filing this action in federal court.  Second, he argues that there is no evidence that Defendant Long acted with deliberate indifference towards Plaintiff's medical needs.

### 1.    Exhaustion of Administrative Remedies.

Defendant Long's first argument is that he is entitled to the grant of summary judgment due to Plaintiff's failure to exhaust the available DOC administrative remedies as required under the Prison Litigation Reform Act (PLRA).  In support, Defendant Long submits that Plaintiff filed one grievance regarding the underlying incident, Grievance No. 332147-10, and that Grievance No. 332147-10 was appealed to final review.  (Doc. 1, Exs. E–G).  However, Defendant Long argues that Grievance No. 332147-10 fails to identify him as a party involved.  (Doc. 47, p. 3).

11

In response, Plaintiff asserts that he did exhaust available administrative remedies via Grievance No. 332147-10. Plaintiff agrees that he did not specifically identify Defendant Long in Grievance No. 332147-10, but that his failure to identify Defendant Long was excused by the identification of Defendant Long in the DOC's response. (Doc. 60, p. 7).

Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner,* 532 U.S. 731, 741 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno,* 204 F.3d 65, 75 (3d Cir. 2000)(footnote omitted). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77.

The proper exhaustion of administrative remedies requires compliance "'with the applicable procedural rules'...that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock,* 549 U.S. 199, 218 (2007) (internal quotation omitted)(*quoting Woodford v, Ngo*, 548 U.S. 81, 88 (2006)). Although the requirement for grievance detail varies among different prison systems, it is these individual requirements that delineate what

constitutes proper exhaustion. *Id.* Accordingly, we turn to the grievance procedure in place for inmates of the Pennsylvania DOC.

The Third Circuit has identified three reviewing stages within the Pennsylvania DOC's grievance system: "Initial Review (DC-ADM-804 Part VI.B), which addresses the inmates filed grievance; the first appeal from the Initial Review, also referred to as the Appeal to Facility Manager (DC-ADM-804 Part VI.C); and a second and final appeal, the Appeal to Secretary's Office of Inmate Grievances and Appeals (DC-ADM-804 Part VI.D)." *Spruill v. Gillis*, 372 F.3d 218, 232 (2004). Plaintiff's Grievance No. 332147-10, regarding the underlying medical claim, was fully appealed in accordance with the DOC administrative remedy process. (Doc. 1, Ex. G). The court must now determine whether the assertion that Plaintiff failed to identify Defendant Long in Grievance No. 332147-10 implicates a procedural default. *Spruill*, 372 F.3d at 232.

In *Spruill*, the Third Circuit held that the identification of specific individuals within a grievance is "mandatory, or nearly so" under Pennsylvania's DOC policy. 372 F.3d at 234. In most circumstances, an inmate's failure to name a key individual would result in procedural default. *Id.* However, such a default may be excused when the responding grievance officer actually identifies the individual at issue in his or her "Initial Review Response," because the primary purpose of the identification requirement is to put prison officials on notice; an aim which is achieved when the prison officials themselves acknowledge that a certain unidentified individual is "fairly within the compass of the prisoner's grievance." *Id.* In the instant action, both parties acknowledge that Plaintiff did

not specifically name any individuals in his initial grievance, but Defendant Dreibelbis' identification of Defendant Long in his "Initial Review Response" dated September 10, 2010, excuses any procedural default with respect to Plaintiff's current claim against Defendant Long. *See Robinson v. Johnson*, 343 Fed. Appx. 778 (3d Cir. 2009); *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007)(finding that procedural default due to non-identification was excused where the response to Plaintiff's grievance indicated that the Grievance Officer "had a conversation" with the previously unidentified Defendant). In the Grievance Officer's response, he indicates that he "consulted" Defendant Long prior to responding to Plaintiff's grievance. Thus, it is recommended that Defendant Long is not entitled to summary judgment based on his argument that Plaintiff failed to exhaust administrative remedies.

**2. Deliberate Indifference**.

With respect to Defendant Long's second argument, that he is entitled to the grant of summary judgment because Plaintiff provided no evidence in support of his assertion that Defendant Long acted with deliberate indifference, Defendant Long submits that Plaintiff failed to establish that there was an excessive risk to his health or safety, and, in the alternative, that Defendant Long was not aware of any such risk. (Doc. 47, p. 11).

In response, Plaintiff asserts Defendant Long was clearly aware of his medical condition, because if he had no knowledge of it, then Defendant Dreibelbis would not have consulted with him regarding the disposition of Grievance No. 332147-10. (Doc. 60, p. 8). Specifically, Plaintiff alleges that Defendant Long was informed of his condition through the

request slips he submitted on August 5 and 19, 2010, in which Plaintiff complained that his pain was not being adequately managed by his treating physicians. *Id.* Plaintiff further avers that his broken jaw was a "serious medical condition." *Id.*

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.) *citing Estelle v. Gamble*, 429 U.S. 97, (1976). To advance any claim under the Eighth Amendment against prison officials, a Plaintiff must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)(quotation marks and citations omitted). Deliberate indifference requires that a prison official know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. Whether an official had the requisite knowledge of a substantial risk is a question of fact, and may be shown by circumstantial evidence. *Id.* at 842. Finally, even if an official is aware of a substantial risk to inmate health or safety, an official may not be held liable if he responded reasonably. *Id.* at 844.

In the specific context of an Eighth Amendment medical care claim, an inmate-plaintiff must allege that the defendant was deliberately indifferent to plaintiff's serious medical needs. *Williams v. Klem*, No. 3:07-CV-1044, 2008 WL 4453100, *7 (M.D. Pa.) *quoting Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F. 2d 326, 346 (3d Cir. 1987). Thus, to establish a violation of his constitutional right to adequate medical care in a prison setting, Plaintiff must point to evidence that demonstrates both (1) a serious medical need,

and (2) acts or omission by prison officials that indicate deliberate indifference to that need. *Rouse v. Planter*, 182 F.3d 192, 197 (3d Cir. 1999).

There is sufficient evidence to demonstrate that Plaintiff's broken jaw was a serious medical condition under the Eighth Amendment. For Eighth Amendment purposes, a medical condition is "serious," where the condition is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 347 (*quoting Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *affd.*, 649 F.2d 860 (3d Cir. 1981)). In the instant matter, it is not in dispute that medical personnel determined Plaintiff's fractured jaw required surgical repair, thus under *Monmouth*, it is a serious medical condition. Now, the court must determine whether Defendant Long acted with deliberate indifference towards Plaintiff's requests for medical care.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, the federal courts are generally reluctant to second guess

medical judgment and to constitutionalize claims which sound in tort law." *Flanyak v. Hopta*, 410 F.Supp 2d 394, 403 (M.D.Pa. 2006). The Court in *Robinson v. U.S.* observed that:

> This [Eighth Amendment ] test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment." *Little v. Lycoming County,* 912 F.Supp. 809, 815 (M.D.Pa.1996) (citing *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979), quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).
>
> When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria,* 709 F.Supp. 542, 547 (M.D.Pa.1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro,* 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean,* 897 F.2d 103, 108-10 (3d Cir.1990).

1:08-CV-932, 2010 WL 1254277, *14 (M.D. Pa.).

The gravamen of Plaintiff's claim against Defendant Long is that he was denied medical care when Defendant Long failed to respond to two inmate request slips. These request slips sought stronger pain medication and inquired as to when Plaintiff would be transferred for surgery. (Doc. 1, Exs. B, D). At deposition Plaintiff admitted to receiving the following medical care: he was examined by a P.A. immediately after he was injured; the P.A. ordered an x-ray which was taken several days after the injury; two weeks later he was examined by Doctor Agawal, who recommended that Plaintiff's jaw required surgical repair; approximately one week later Plaintiff was examined by a dentist; and two weeks later

Plaintiff was transferred to SCI-Pittsburgh for surgery. (Doc. 46, Ex. 1, p. 16-18).[7] Defendant Long never examined Plaintiff's jaw.

This case is unique in that Plaintiff clearly received "some medical attention" from the SCI-Smithfield medical staff for his jaw fracture, but alleges that he was denied medical care by a non-treating physician who did not respond to two inmate request slips asking for stronger pain medication and inquiring about the date he would be transferred to another facility for jaw surgery. Defendant Long's *only* involvement in the treatment of Plaintiff's jaw injuries was that Plaintiff sent him two request slips. Further, when Plaintiff submitted these request slips, his condition had been fully evaluated by the prison medical staff, and a course of treatment had been recommended. Any failure of Defendant Long to provide treatment beyond the basic medical care mandated by Eighth Amendment speaks more to the adequacy of the medical care than the absolute denial of medical care alleged by Plaintiff, and as such is not a viable Eighth Amendment claim. For the foregoing reasons, it is recommended that Defendant Long's motion for summary judgment be granted.

**B. Defendant Dreibelbis' Motion for Summary Judgment**.

In his motion, Defendant Dreibelbis argues that he is entitled to the grant of summary judgment for two reasons. First he argues that there is no evidence that he acted with deliberate indifference to Plaintiff's serious medical needs, as is required to sustain an Eighth Amendment claim. Second, he contends that there is no evidence that he was personally

---

[7]In addition to being treated for his jaw fracture during this period, Plaintiff also reported to the medical department two to three times daily to receive insulin injections.

involved in the alleged deprivation of Plaintiff's rights, an essential element of all §1983 claims.   In response, Plaintiff argues that even though he did not contact Defendant Dreibelbis directly, he was aware of Plaintiff's medical complaints because he was the hearing officer assigned to the grievance.  (Doc. 62, p. 3).

The issues of deliberate indifference and personal involvement present the common issue of whether there is any evidence that Defendant Dreibelbis had actual knowledge that Plaintiff was receiving inadequate medical care and knowingly declined to remedy the situation.  *Robus v. Pennsylvania Dept. Of Corrections*, No. 4-CV-2175, 2006 WL 2060615, *5 (E.D.Pa. Jul. 20 2006) (*citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

It is clearly established that, in a case like this, where Plaintiff's complaint reflects that an inmate received some level of on-going medical care, non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor." *Durmer*, 991 F.2d at 69.  The Third Circuit explained the underlying rationale for this rule as follows:

> If a prisoner is under the care of medical experts..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain the division of labor.  Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.  Accordingly, we concluded that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-

> medical prison official ...will not be chargeable with the Eighth Amendment
> scienter requirement of deliberate indifference.

*Spruill*, 372 F.3d at 236. The Third Circuit has also held that CHCAs, like Defendant

Dreibelbis, are "undisputably administrators, [and] not doctors." *Thomas v. Dragovich*, 142

F. App'x 33, 39 (3d Cir. 2005). Thus, in order for Plaintiff to sustain his allegations that

Defendant Dreibelbis acted with deliberate indifference, he must show that Defendant

Dreibelbis possessed actual knowledge or a reason to believe that he was being mistreated,

or not treated, by the prison physicians.

In his Amended Complaint, Plaintiff alleges that Defendant Dreibelbis was

deliberately indifferent to his medical needs when he failed to approve a soft diet prescribed

(Doc. 10 ¶13) and when he delayed Plaintiff's transfer to SCI-Pittsburgh for surgery (Doc. 10

¶36). In this case the facts clearly show that Plaintiff was receiving care from medical staff.

Further, Plaintiff has failed to offer any evidence that Defendant Dreibelbis, as a CHCA, was

responsible for approving inmate diets or for scheduling inmate surgeries. In his statement

of facts, Dreibelbis avers that both diet modifications and scheduling surgeries are approved

and coordinated by Corizon. Plaintiff fails to offer any evidence that Defendant Dreibelbis

was responsible beyond the unsupported allegation that "Dreibelbis was the person who got

things done in the medical department." (Doc. 63 ¶3). Further, Plaintiff offers no evidence

that Defendant had reason to believe that Plaintiff was not being provided with proper care

until he received Grievance No. 332147-10 on August 24, 2010;[8] Plaintiff was transferred to

---

[8]The record reflects that, prior to filing an official grievance, Plaintiff submitted: a sick
call request on July 30, 2010, seeking stronger pain medication; a request slip to Defendant

SCI-Pittsburgh that same day.[9]

Further, the record reflects that Defendant Dreibelbis' only involvement in this action stems from his rejection of Plaintiff's Grievance No. 332147-10. In an action brought pursuant to 42 U.S.C. §1983, a defendant must have been personally involved in the alleged wrongs. "Merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Garvey v. Martinez*, No. 3:08-CV-2217, 2010 WL 569852 *7 (M.D.Pa. Feb. 11, 2010)(*citing Whetstone v. Ellers*, No. 3:08-CV-2306, 2009 WL 3055354 *8 (M.D.Pa. Sept. 24, 2009). Thus, it is recommended that Defendant Dreibelbis' motion for summary judgment be granted because there is no evidence that he was personally involved, or acted with deliberate indifference towards Plaintiff's medical needs.

---

Long on August 5, 2010 seeking stronger pain medication; a sick call request on August 14, 2010 seeking stronger pain medication; and, a request slip to Defendant Long on August 19, 2010, seeking stronger pain medication. (Doc. 1, Exs. A-D). None of these documents were submitted to Defendant Dreibelbis, and Plaintiff has offered no evidence that Defendant Dreibelbis was aware of Plaintiff's complaints prior to the date he was assigned to respond to Plaintiff's grievance.

[9]While Grievance No. 332147-10 dated August 19, 2010, it was not received by the facility grievance coordinator until August 24, 2010.

V.      **RECOMMENDATION.**

Based on the foregoing discussion, we respectfully recommend that:

(1) Defendant Long's motion for Summary Judgment should be **GRANTED**;

(2) Defendant Dreibelbis' motion for Summary Judgment should be **GRANTED**.


                                        **s/Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: September 26, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY TENON, | : | CIVIL ACTION NO. **1:12-CV-1278** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WILLIAM DREIBELBIS, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 26, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:   September 26, 2013**