IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY L. TENON,                      :
            Plaintiff                  :
                                       :
    vs.                                :    CIVIL NO. 1:CV-12-1278
                                       :
WILLIAM DREIBELBIS, et al.,            :    (Judge Caldwell)
            Defendants                 :
                                       :
                                       :


*M E M O R A N D U M*

I.  *Introduction*

        Plaintiff, Anthony L. Tenon, is an inmate at the State correctional institution

at Smithfield, Pennsylvania.  He filed this 28 U.S.C. § 1983 civil-rights suit alleging Eighth

Amendment medical claims arising from treatment he received for a broken jaw.  The

defendants are: Dr. Ronald Long, at the relevant times the physician responsible for

inmate medical care at the prison; and Dr. Ramesh Agarwal, a doctor who consulted one

time on the care to be provided for the injury.  Plaintiff claims each of the defendants

violated the Eighth Amendment by failing: (1) to ensure a timely operation on his jaw; (2)

to provide pain medication; and (3) to provide a soft diet.

        The defendants have each filed a motion for summary judgment.  In moving

for summary judgment, they both argue that Plaintiff has failed to show they were

deliberately indifferent to his serious medical needs, an essential element of an Eighth

Amendment medical claim.  Dr. Agarwal also argues that he did not act under color of

state law, an essential element of a civil-rights claim under section 1983.

II.   *Procedural History*

In July 2012, Plaintiff initiated this lawsuit by filing his original complaint pro se.  He named as defendants Dr. Long and Dr. Agarwal and three others: William Dreibelbis, the prison's health-care administrator; and Josh Mahute and Sean Tyson, both physician assistants at the prison.  Plaintiff set forth Eighth Amendment claims against the defendants and a state-law claim for negligence, all arising from the treatment he received for his broken jaw.

The magistrate judge conducted an initial screening of the complaint and recommended dismissal of all the claims except the ones against Dreibelbis.  Before we acted on the recommendations, Plaintiff filed an amended complaint.  In November 2012, the magistrate judge conducted an initial screening of the amended complaint.  In December 2012, we adopted his report and recommendations and did the following, in pertinent part.  We dismissed the following claims: (1) the Eighth Amendment medical claims against Defendants Mahute, Tyson, and Dr. Agawal; and (2) the state-law negligence claims against all the defendants.  We permitted the Eighth Amendment claims to proceed against Dreibelbis and Dr. Long.  *See Tenon v. Dreibelbis*, 2012 WL 6561378 (M.D. Pa. Dec. 17, 2012)(magistrate judge's report at 2012 WL 6561730).

In November 2013, accepting the magistrate judge's report and recommendations, we granted Dreibelbis' and Dr. Long's motions for summary judgment. *Tenon v. Dreibelbis*, 2013 WL 5961081 (M.D. Pa. Nov. 7, 2013).  In January 2015, the Third Circuit ruled that claims could not be made against the other defendants but

decided that the Eighth Amendment claims could proceed against Dr. Agarwal and Dr. Long. The case was remanded for further proceedings. *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015)(nonprecedential).[1]

After remand, Plaintiff obtained counsel. Plaintiff was granted leave to file a second amended complaint against Dr. Long and Dr. Agarwal, in which he raised the Eighth Amendment claims now awaiting resolution. Dr. Agarwal filed a partial motion to dismiss, which we denied. *Tenon v. Dreibelbis*, 190 F. Supp. 3d 412, 418 (M.D. Pa. 2016). The motions for summary judgment followed.

III.    *Standard of Review*

Fed. R. Civ. P. 56 governs the grant of summary judgment. The moving party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017)(citation omitted).

In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[1] Plaintiff did not appeal our dismissal of the state-law negligence claims, *Tenon*, 606 F. App'x at 683 n.2, and those claims are not before us.

-3-

stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). We "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and we will only grant the motion "if no reasonable juror could find for the non-movant." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

IV.  *Background*

At the relevant time, Prison Health Services/Corizon was the private medical provider for medical care at the prison. (Doc. 121-5, ECF p. 15, Long Dep.). Defendant Dr. Long, board-certified in family practice, was the medical director at the prison and the regional medical director for the central region for Prison Health Services/Corizon. (Doc. 116, Long's statement of material facts (Long's SMF) ¶¶ 4-6, admitted by Plaintiff).

As the medical director at the prison, Dr. Long supervised the physician assistants and nurses who provided the daily medical care to the inmates. (Doc. 121-5, ECF pp. 12-13, Long Dep.). Dr. Long would thus have been monitoring the treatment Plaintiff received from physician assistants and nurses. (*Id.*, ECF p. 24). If Dr. Long believed a particular medical problem could not be handled at the prison, he would refer it

to an outside specialist.  (*Id.*, ECF pp. 17-18).  If the specialist recommended surgery, Dr. Long would review the chart and arrange for the surgery to be performed.  (*Id.*, ECF p. 18).

As the regional medical director in charge of the Pennsylvania central region, Dr. Long was required to sign off on consultations requested at other prisons, and either approve them or provide an alternative treatment plan.  (*Id.*, ECF pp. 13-14).  Dr. Long would thus sometimes sign off on a referral to an outside doctor both as the prison's medical director and as the regional medical director.  (*Id.*, ECF p. 18).

On July 21, 2010, Plaintiff broke his jaw after a fall in his cell caused by a diabetic seizure.  (Doc. 116, Long's SMF ¶ 9, admitted by Plaintiff; Doc. 121-7, ECF p. 1, progress notes dated July 21, 2010); Doc. 121-3, ECF p. 12, Tenon Dep.).  Plaintiff sought treatment that day (Doc. 121-7, ECF p. 1, progress notes dated July 21, 2010) and walked to the infirmary himself.  (Doc. 121-3, ECF p. 12, Tenon Dep.).  He complained of mouth pain and was able to talk and eat with slight discomfort.  (Doc. 121-7, ECF p. 1, progress notes dated July 21, 2010; Doc. 111, Agarwal's SMF ¶ 10, admitted by Plaintiff).  He was prescribed ibuprofen (Motrin), 600 mg. three times a day, for seven days.  (Doc. 110-5, ECF p. 53, physicians' order form; Doc. 116-2, ECF pp. 53-54, Long Dep.).

On July 29, 2010, almost eight days later, Plaintiff was again seen in the infirmary, complaining of bilateral mandible pain.  (Doc. 111, Agarwal's SMF ¶ 11, admitted by Plaintiff).  Physician assistant Mahute discontinued the Motrin and prescribed

Tylenol, 500 mg., twice a day, and naprosyn (Aleve), 500 mg. twice a day, both to be taken for a week.  (Doc. 110-5, ECF p. 53, physician's order form; Doc. 116-2, ECF pp. 14-15, Long Dep.; Doc. 111, Agarwal's SMF ¶ 12, admitted by Plaintiff).  Plaintiff stated he received the Tylenol and the Aleve.  (Doc. 110-5, ECF pp. 20-21, Tenon Dep.).

On July 29, 2010, Mahute also filled out a dietary order form, checking the box for a soft diet for Plaintiff.  (Doc. 121-9, ECF p. 1).  Dr. Long did not cosign this order nor does he recall seeing it.  (Doc. 121-5, ECF pp. 31-33, Long Dep.).  The procedure is that after he signs off on the order, the DOC would be responsible for carrying it out.  (Doc. 121-5, ECF pp. 34, Long Dep.).

On July 29, 2010, Mahute also ordered an X-ray of the bilateral mandible.  (Doc. 110-5, ECF p. 53, physician's order form; Doc. 111, Agarwal's SMF ¶ 13, admitted by Plaintiff).  X-rays were taken on the same day and read by the radiologist on August 2, 2010.  The X-ray report stated:

> Four views of the mandible were obtained.  There is a mandibular fracture at the left body of the mandible near the angle of the mandible.  Elsewhere, there is no apparent fracture or other acute bony abnormality.  There is no evidence of a mass lesion.  Soft tissue or dental abnormality is not excluded.

(Doc. 110-5, ECF p. 62, radiology report).  Under "Impression," the report stated: "left mandibular fracture at the body of the mandible near the angle of the mandible."  (*Id.*).

Also on July 29, 2010, Mahute requested a consultation with an off-site physician.  (Doc. 110-5, ECF p. 57, "consultation record," Form DC-441).  He described

Plaintiff's history as a "Rt mandibular fracture[,] possible ORIF."[2]  He noted that the

consultation should be done "ASAP."  (*Id.*).  Dr. Long approved the referral the next day,

July 30, 2010, to an ear, nose and throat specialist.  (*Id.*; Doc. 116, Long's SMF ¶ 10,

admitted by Plaintiff in pertinent part).  Approving the referral was the first time Dr. Long

was aware Plaintiff had a broken jaw.  (Doc. 116-2, ECF p. 14).

On July 30, 2010, Plaintiff submitted a "sick call request" to the prison,

indicating that he needed "to talk to a P.A. about getting stronger pain medication for my

broken jaw because the Motrin is not working at all."  (Doc. 111, Agarwal's SMF ¶ 14,

admitted by Plaintiff; Doc. 110-5, ECF p. 73, sick call request).

On August 4, 2010, about a week after his last visit, Plaintiff was seen in the

prison medical service for ankle pain after injuring his ankle.  (Doc. 111, Agarwal's SMF ¶

15, admitted by Plaintiff; Doc. 110-5, ECF p. 49, progress notes).  On August 5, 2010,

Plaintiff was prescribed Motrin, 600 mg., three times a day for two weeks, for ankle pain.

(Doc. 110-5, ECF pp. 21-22, Tenon Dep.; Doc. 110-5, ECF p. 54, physician's order form).

Plaintiff testified that as of August 5, 2010, he still had Motrin for pain, but his complaint

was that it was not working.  (Doc. 110-5, ECF p. 29, Tenon Dep.).

On August 5, 2010, Plaintiff submitted an "inmate request to staff member"

addressed to Dr. Long, stating that he needed to speak to him about his broken jaw,

complaining that he had been waiting three weeks to get his jaw fixed, stating that he had

submitted a sick call slip to obtain "stronger pain medication for [his] broken jaw, and that

---

[2]  "ORIF" means "open reduction internal fixation."

the Motrin that had been prescribed by physician assistants was "not working at all," although Plaintiff also explained he was receiving the Motrin for a sprained ankle, not his jaw. (Doc. 110-5, ECF p. 74, "inmate request" form; Doc. 110-5, ECF pp. 17-18, Tenon Dep.; Doc. 111, Agarwal's SMF ¶ 16, admitted by Plaintiff). In the form, Plaintiff also complained that he could not sleep at night or eat food because of the pain. (Doc. 110-5, ECF p. 74, "inmate request" form).

   According to Plaintiff, Dr. Long did not respond to this request slip. (Doc. 121-3, ECF pp. 22-23, Tenon Dep.). According to Dr. Long, he did not see the request slip, or he would have responded. The slips typically would come to him, but a lot of times a request slip addressed to him does not reach him. (Doc. 121-5, ECF pp. 26-27, Long Dep.).

   On August 5, 2010, Plaintiff was seen again for his ankle. (Doc. 110-5, ECF p. 50, progress notes; Doc. 111, Agarwal's SMF ¶ 17, admitted by Plaintiff). Plaintiff stated that the Motrin ran out by August 14, 2010. (Doc. 110-5, ECF pp. 18-19, Tenon Dep.).

   The July 30, 2010, referral for a consultation was made to Dr. Agarwal. (Doc. 110-5, ECF p. 57, "consultation record"). Dr. Agarwal practices otolaryngology (specializing in the ear, nose and throat) and, as part of his practice, from time to time examined prisoners at his office as an off-site consultant. (Doc. 111, Dr. Agarwal's statement of material facts (Agarwal's SMF) ¶ 3, admitted by Plaintiff). Dr. Agarwal has done outside consulting for prisons for about fifteen to twenty years, and less than five

percent of his practice involves prison consultations. (Doc. 118-8, ECF p. 9, Agarwal Dep.). Dr. Agarwal was not employed by the Pennsylvania Department of Corrections (DOC). (Doc. 111, Dr. Agarwal's statement of material facts (Agarwal's SMF) ¶ 3, admitted by Plaintiff).

The consultation was performed pursuant to DOC policy 13.2.1, Access to Health Care Procedures Manual, Section 6.n.2.b.vi and vii. (Doc. 110-4, ECF pp. 49-50, Long Dep.; Doc. 111, Agarwal's SMF ¶ 21, admitted by Plaintiff). That section authorizes "off-site specialty consultations." The section anticipates the specialist will record his findings and recommendations and that a review would occur by prison personnel of any recommendations by the specialist requiring immediate attention. (Doc. 110-4, ECF pp. 69-70, DOC policy).

Plaintiff was transported to Dr. Agarwal's office on August 5, 2010, for the consultation, the only time Dr. Agarwal saw Plaintiff. (Doc. 111, Agarwal's SMF ¶¶ 4 and 21, admitted by Plaintiff). Plaintiff would have brought with him the Form DC-441 and other medical records. (Doc. 110-3, ECF pp. 15-17, Agarwal Dep.). The consultation lasted about thirty-five to forty minutes. (Doc. 110-3, ECF p. 19, Agarwal Dep.; Doc. 111, Agarwal's SMF ¶ 30). During the consultation, Dr. Agarwal took a history from Plaintiff and reviewed the records sent to him by the prison, including Plaintiff's medication record showing the pain medications Motrin, Naprosyn (i.e., Aleve) and Tylenol. (Doc. 111, Agarwal's SMF ¶¶ 27-28, admitted by Plaintiff). Dr. Agarwal examined Plaintiff's jaw.

(Doc. 110-3, ECF p. 18, Agarwal Dep.; Doc. 111, Agarwal's SMF ¶ 29, admitted by Plaintiff).

Dr. Agarwal noted his observations in the part of Form DC-441 to be completed by the specialist. (Doc. 110-5, ECF p. 57, consultation record, Form DC-441). He noted: the July 29 X-ray showed a fracture of the body of the right mandible; Plaintiff seemed to have a thin mandible; there was tenderness to the right side of the jaw at the site of the fracture; the August 2 X-ray report shows a left mandible fracture; his diagnosis was a right mandible fracture, nondisplaced. (Doc. 110-3, ECF pp. 17-18, Agarwal Dep.; Doc. 110-5, ECF p. 57, consultation record, Form DC-441). He advised that Plaintiff be referred to an oral surgeon. (Doc. 110-3, ECF p. 18, Agarwal Dep.; Doc. 110-5, ECF p. 57, consultation record, Form DC-441).

Dr. Agarwal has not "read" fractured mandibles for the past fifteen or twenty years. (Doc. 110-3, ECF p. 24, Agarwal Dep.). He does not treat fractured mandibles. (Doc. 110-3, ECF pp. 21, 26, Agarwal Dep.). He recommended that Plaintiff's injury go to an oral surgeon, a doctor who repairs or treats those kinds of fractures. (Doc. 110-3, ECF p. 25, Agarwal Dep.). At his deposition, Dr. Agarwal stated that the nature of the fracture dictates the timing of how soon the oral surgeon should see the patient, but he had no opinion as to how soon the referral should be made by the prison doctors. If it was his patient, he would call the oral surgeon, who would make the decision on when to see the patient. (Doc. 110-3, ECF pp. 28-29, Agarwal Dep.).

According to Plaintiff, he asked Dr. Agarwal at the consultation when he was going to be scheduled for surgery, and Defendant told him to be patient. (Doc. 118-10, ECF p. 36, Tenon Dep.). He had asked Dr. Agarwal if they could speed up the surgery because he was in pain. (Doc. 118-10, ECF p. 25, Tenon Dep.). Plaintiff told him his pain medication was not working. (Doc. 118-10, ECF p. 13, Tenon Dep.). Dr. Agarwal said nothing in response. (Doc. 118-10, ECF p. 35, Tenon Dep.). Plaintiff told him he was not receiving a soft diet. Dr. Agarwal did not respond to this statement either. (Doc. 118-10, ECF pp. 35-36, Tenon Dep.). Dr. Agarwal did not prescribe pain medication or a soft diet for him. (Doc. 118-10, ECF p. 25, Tenon Dep.).

According to Dr. Agarwal, Plaintiff did not complain about pain. If he had, Defendant would have written it down. (Doc. 110-3, ECF pp. 29-30). But even if Plaintiff had complained about a lot of pain, Defendant would not have prescribed pain medication as that was "not [his] job." (Doc. 110-3, ECF p. 30, Agarwal Dep.). According to Dr. Agarwal, it was also "not [his] job" to prescribe a soft diet; that was the prison's decision. (Doc. 110-3, ECF p. 30, Agarwal Dep.).

According to Dr. Long, Dr. Agarwal's role was limited to telling him how best to fix Plaintiff's jaw. (Doc. 110-4, ECF p. 52, Long Dep.). Dr. Agarwal was not responsible for scheduling surgery, ordering pain medication or ordering a soft diet. (Doc. 110-4, ECF p. 49-52, Long Dep.). Rather, the prison medical department was responsible for scheduling other outside consultations (including surgery), ordering pain medication and ordering a soft diet. (Doc. 110-4, ECF pp. 18-21 and 49-52, Long Dep.).

As such, there was no expectation Dr. Agarwal would order pain medication, order a soft diet, or schedule Plaintiff for an appointment with another physician or for surgery with another physician.  (Doc. 110-4, ECF p. 51-52, Long Dep.).  It is not the specialist's responsibility to see that his recommendations are carried out; it is Dr. Long's instead.  (Doc. 110-4, ECF p. 22-23, Long Dep.).

On August 6, 2010, defendant Dr. Long reviewed Dr. Agarwal's consultation record.  (Doc. 111, Agarwal's SMF ¶ 32, admitted by Plaintiff).  "That same day, Dr. Long referred Plaintiff to an oral surgeon for an opinion regarding whether Plaintiff required surgery."  (Doc. 111, Agarwal's SMF ¶ 32, admitted by Plaintiff; Doc. 110-4, ECF p. 86, Chung consultation record, DOC Form DC-441).  On the form, Dr. Long noted that he wanted the consultation " due no later than soon."  (Doc. 110-4, ECF p. 86, Chung consultation record, DOC Form DC-441).  On the form, he also wrote in the "history" section: "right mandibular fracture-nondisplaced."  (Doc. 110-4, ECF p. 86, Chung consultation record, DOC Form DC-441).

According to Dr. Long, "due no later than soon" meant he wanted the consultation  done "as soon as possible" but that "soon" depended "on the availability of the oral surgeon," (Doc. 110-4, ECF p. 44, Long Dep.), "as soon as they're able [to] get that appointment with Dr. Chung."  (Doc. 110-4, ECF p. 45, Long Dep.).  He cannot control what happens outside the prison.  (Doc. 110-4, ECF p. 45, Long Dep.).

On August 9, 10 and 15, 2010, Plaintiff was seen by the prison medical service.  (Doc. 111, Agarwal's SMF ¶ 33, admitted by Plaintiff).  On August 13, 2010, a

physician assistant signed a dietary order form authorizing an enhanced evening snack bag for Plaintiff as a fragile diabetic. (Doc. 121-9, ECF p. 2, order form). Dr. Long cosigned the form the same day. (Doc. 121-5, ECF p. 32, Long Dep.).

On August 14, 2010, Plaintiff submitted a "sick call request" to the prison (not to Dr. Agarwal). In the request, his complaint was:

> I wrote a sick call about 2 weeks ago about getting stronger pain medication for my broken jaw. I never got call[ed] down or [got] any response back from [the] call. I need some stronger pain medication. The Motrin is not working at all.

(Doc. 111, Agarwal's SMF ¶ 33, admitted by Plaintiff; Doc. 110-5, ECF p. 75, sick call request).

On August 19, 2010, Plaintiff submitted an "inmate's request to staff member" to Dr. Long, complaining that: (1) he had written numerous sick call slips about the pain he was having in his broken jaw while eating and sleeping; (2) that it seemed Dr. Long was ignoring his request and sick call slips; (3) that he needed stronger pain medication for the pain in his broken jaw; and (4) that he needed to know when his jaw was going to be fixed. (Doc. 110-5, ECF p. 76, "inmate's request to staff member"; Doc. 111, Agarwal's SMF ¶ 35, admitted by Plaintiff).

According to Plaintiff, Dr. Long did not respond to this request slip. (Doc. 121-3, ECF pp. 22-23, Tenon Dep.). According to Dr. Long, he did not see this request slip. (Doc. 121-5, ECF p. 27, Long Dep.).

On August 19, 2010, Plaintiff submitted an "inmate grievance" to Ms. Hollibaugh, the prison grievance coordinator, complaining in part, about the delay in

-13-

getting his jaw fixed; asking to see a specialist within a week; stating that he could "barely eat"; and stating that he takes Motrin but that the prescribed pain medication "is not working." (Doc. 110-5, ECF p. 77, "inmate grievance" form). In the grievance, Plaintiff mentioned that Dr. Agarwal had made a referral to an oral surgeon, but he made no complaints about the care provided by Dr. Agarwal. (*Id.*).

William Dreibelbis, the prison health care administrator, made a response to the grievance, dated September 10, 2010. In the response, he notes that Plaintiff alleges that he was "waiting way too long" to "have his broken jaw fixed" and that his pain medication was not working. Dreibelbis states that he discussed the grievance with Dr. Long and found that all of Plaintiff's care had been "appropriate and timely," observing that Plaintiff had been seen by Dr. Agarwal and that he had been transferred to SCI-Pittsburgh for a consultation with Dr. William Chung, a maxillofacial specialist. (Doc. 110-5, ECF p. 78, initial review response).[3]

Dr. Long testified that, to the best of his recollection, he never saw the August 19 grievance nor did he discuss it with Hollibaugh or anyone else. (Doc. 121-5, ECF pp. 28-29, Long Dep.).

In the meantime, on August 24, 2010, about five weeks after the injury, Plaintiff was transferred to SCI-Pittsburgh. (Doc. 110-5, ECF p. 52, progress notes; Doc. 111 Agarwal's SMF ¶ 38, admitted by Plaintiff). Sometime between seeing Dr. Agarwal

---

[3] As noted below, Plaintiff unsuccessfully appealed the denial of the grievance to the prison's superintendent (Doc. 121-9, ECF p. 7) and then to the DOC's chief grievance officer at SCI-Camp Hill. (Doc. 121-9, ECF p. 8).

and the transfer to SCI-Pittsburgh, Plaintiff was seen by a dentist. He told her he had

broken his jaw, but he did not ask for stronger pain medication because she was not a

doctor and he believed she did not have anything to do with it. (Doc. 110-5, ECF pp. 39-

41, Tenon Dep.). He also did not ask her for a soft diet. (Doc. 110-5, ECF p. 41, Tenon

Dep.).

     The next day, August 25, 2010, Plaintiff had a consultation with Dr. Chung.

(Doc. 110-6, ECF p. 22-23, Chung Dep.). Dr. Chung completed the consultation record,

DOC Form DC-441. (Doc. 118-7, ECF p. 11, consultation form, DOC Form DC-441). As

written on the form, and as Dr. Chung recalled at his deposition, he took a panorex X-ray

of the jaw. This revealed: (1) a right subcondylar fracture; (2) a right parenthesis fracture;

and (3) a left body fracture, meaning a left lower jaw fracture. (Doc. 110-6, ECF pp. 23-

24, Chung Dep.). He "recommended that [Plaintiff] be considered for repair of the right

parasymphysis fracture and the left body fracture and observation of his right

subcondylar fracture because it was not displaced." (Doc. 110-6, ECF p. 24, Chung

Dep.). Dr. Chung testified that he had not ordered pain medication for Plaintiff because it

is not noted in the consultation record. If he had thought Plaintiff required pain

medication, he would have noted it in the record. (Doc. 110-6, ECF p. 47-48, Chung

Dep.).

     On September 16, 2010, about seven weeks after the injury, Dr. Chung

performed surgery on Plaintiff's jaw. The preoperative diagnosis was left body fracture of

the mandible, right subcondylar fracture of the mandible, right parasymphysis fracture to

the mandible, status post fall from syncope. (Doc. 110-6, ECF p. 32, Chung Dep.; Doc. 110-7, Dr. Chung's operative report). The procedure performed was open reduction, internal fixation of left body fracture, closed reduction without manipulation of right subcondylar fracture and closed reduction without interdental fixation for right parasymphysis fracture. (Doc. 110-7, ECF p. 8, Dr. Chung's operative report). Dr. Chung observed that "the right parasymphysis fracture had a callus, and there was no flexion of the mandible when it was distracted manually." (Doc. 110-7, ECF p. 9, Dr. Chung's operative report). As part of his discharge instructions, Dr. Chung prescribed medication for Plaintiff. (Doc. 118-4, ECF p. 5).

On October 24, 2010, Plaintiff submitted an "official inmate grievance" to the facility grievance coordinator, acting as an appeal of the grievance filed on August 19, 2010. He complained in this second grievance that "it took Healthcare 5 weeks to get me to see a (sic) oral surgeon about my broken jaw" and that "the medication that Medical was giving me was not working . . . ." (Doc. 110-5, ECF p. 79, "official inmate grievance" form). On November 1, 2010, the prison's superintendent wrote that the medical service had acted "consistent with policy" and that he supported the denial of the initial grievance. (Doc. 110-5, ECF p. 80).

Plaintiff wrote another inmate grievance dated November 4, 2010, directed to the DOC's chief grievance officer, in which he complained of the denial of the prior two grievances. (Doc. 110-5, ECF p. 81, grievance form). On March 30, 2011, the chief grievance officer upheld the denial of the previous grievances, writing that "there is no

evidence to show that you suffered harm during the time that elapsed from the injury until treatment was rendered" and that Plaintiff was "evaluated and treated by the medical staff regularly during this time period." (Doc. 110-5, ECF p. 83, "final appeal decision").

Plaintiff still has popping in the left side of his jaw and numbness in the chin area. (Doc. 110-5, ECF p. 44, Tenon Dep.). In July 2015, Dr. Chung saw him again about complaints of left TMJ pain and intermittent left mandibular parasthesia. (Doc. 118-7, ECF p. 13, consultation record).

Dr. Neeraj Panchal has supplied Plaintiff with a one-page expert report. The report states:

> Mr. Anthony Tenon suffered a complex bilateral mandibular fracture due to a fall after a diabetic seizure on July 25, 2010. As per the radiology report from July 29, 2010, a fracture of the mandible was identified. On August 5, 2010 Mr. Tenon was evaluated by an otolaryngologist (ENT Surgeon), who referred Mr. Tenon to an oral maxillofacial surgeon for management of his mandible fracture. On August 25, 2010, Mr. Tenon was evaluated by an oral maxillofacial surgeon, who recommended open reduction internal fixation of right symphysis and left body fractures and closed management of a right subcondylar fracture. Mr. Tenon had surgery on September 16, 2010 for repair of his fractures. As per the operative report, a callus was identified at the right symphysis fracture, open reduction was performed at the left body fracture and closed management was performed at the right subcondylar fracture.
>
> Based on the review of medical records I received, management of Mr. Tenon's complex bilateral mandibular fractures was not in a timely fashion. Acute fractures of the mandible are generally treated as soon as possible. Mr. Tenon's fracture was repaired approximately seven weeks after initial identification of the injury. My professional opinion

is that the standard of care was not followed due to significant
delay in care.

(Doc. 118-7, ECF p. 12).  During Plaintiff's consultation with Dr. Chung on August 25,
2010, Dr. Chung expressed surprise that Plaintiff was just then getting to see him after
Plaintiff told him when he had broken his jaw.  (Doc. 110-5, ECF pp. 42-43, Tenon Dep.).

V.   *Discussion*

   A.  *Eighth Amendment Medical Claims*

   The Eighth Amendment prohibits the "'unnecessary and wanton infliction of
pain contrary to contemporary standards of decency.'"  *Rouse v. Plantier*, 182 F.3d 192,
197 (3rd Cir. 1999) (quoting *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125
L.Ed.2d 22, 31 (1993)).  In the context of prison medical care, this means an inmate
plaintiff must prove two things.  First, he must prove that the defendant prison officials or
employees had a subjective state of mind indicating they were deliberately indifferent to
his medical needs.  Second, he must prove that those medical needs were objectively
serious.  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).

   "As the Supreme Court has explained, 'deliberate indifference entails
something more than mere negligence' and is a subjective standard that requires the
official to both 'be aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists' and to 'also draw the inference.'"  *Id.* at 538
(quoting *Farmer v. Brennan*, 511 U.S. 825, 835-37, 114 S.Ct. 1970, 1977-79, 128
L.Ed.2d 811 (1994)).  Deliberate indifference requires "obduracy and wantonness," "a

recklessness or conscious disregard of a serious risk" to the prisoner. *Rouse, supra*, 182 F.3d at 197 (quoted cases omitted). It follows that medical malpractice, as serious as it is, does not state an Eighth Amendment claim. *Id.* Deliberate indifference, "like any other form of scienter," can "be proven through circumstantial evidence and witness testimony." *Pearson*, 850 F.3d at 535.

A medical need is serious if it has been diagnosed by a physician as requiring treatment, *id.* at 534 (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)), or if the need is so obvious that even a layperson could recognize the necessity of a doctor's attention. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

### B. *The Claim Against Dr. Agarwal*

#### 1. *Dr. Agarwal Was Acting Under Color of State Law During His One-Time Consultation With Plaintiff*

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3rd Cir. 2013). Dr. Agarwal argues that the section 1983 claim against him fails because he did not act under color of state law. In support of this position, he makes two points. First, according to Defendant, for a private physician to act under color of state law, he must have treated the plaintiff within the confines of the prison and be employed by the prison. In the instant case, Defendant treated Plaintiff at his office, and he was not

employed by the DOC.  Second, a consulting physician can act under color of state law when he is "vested with state authority to provide essential medical care to inmates." (Doc. 112, DF.'s Br. in Supp. at p. 17).  But Defendant had no responsibility to provide the care upon which the Eighth Amendment medical claim is based: pain medication, a soft diet, and timely surgery.  Instead, Defendant was consulted solely to recommend how best to fix Plaintiff's jaw.

Defendant's first point is based on *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), and *Fullman v. Pennsylvania Dep't of Corr.*, No. 07-CV-79, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007).

Defendant's reliance on *West* is misplaced.  In *West*, the Supreme Court did state that the defendant physician there was a state actor after noting that he had an employment contract with the state and "worked as a physician at the prison hospital . . . ."  487 U.S. at 56-57, 108 S.Ct. at 2259-60.  However, this was merely an application to the facts of *West* of the Court's broadly worded functional test set forth immediately before this quoted language.  Earlier, the Court stated:

> It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State.  Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner.  Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.  The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent

> Atkins; and respondent voluntarily assumed that obligation by
> contract.

*Id.* at 55-56, 108 S.Ct. at 2259 (footnote omitted). Similarly here, Pennsylvania had an

Eighth Amendment obligation to provide adequate medical care to Plaintiff, it delegated

that function to Dr. Agarwal, and Dr. Agarwal voluntarily assumed that obligation by

accepting the referral. Dr. Agarwal was therefore acting under color of state law. The

situation is comparable to *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595-596 (6th Cir.

2014), albeit there the one-time consultation appears to have occurred at the prison. *But*

*see Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 798 (7th Cir. 2014)(physicians to

whom inmate was referred for a one-time examination did not act under color of state law

as this represented "only an incidental and transitory relationship with the penal system").

That Dr. Agarwal did not have a contract with Pennsylvania is immaterial.

*See Conner v. Donnelly*, 42 F.3d 220, 225 (4th Cir. 1994)("Regardless of whether the

private physician has a contractual duty or simply treats a prisoner without a formal

arrangement with the prison, the physician's function within the state system is the

same"); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 826 (7th Cir.

2009)(under *West* the existence of a contract cannot be the focus of the inquiry although

it is important to deciding whether the physician voluntarily undertook the state's

constitutional obligation to the prisoner)

Nor is it material that Dr. Agarwal did not treat Plaintiff within the confines of

the prison. *Conner*, 42 F.3d at 226 ("Although the physician in *West* treated prisoners

within the prison hospital and using prison equipment . . . the Supreme Court's decision

did not turn on this fact. It is the physician's function while working for the state, not the place where he performs his duties, that determines whether he acts under color of state law."); *Rodriguez*, 577 F.3d at 826 (*West* does not indicate "that all medical advice rendered outside of the prison walls is exempt from the state action doctrine simply because it is provided outside the prison"); *Leaphart v. Prison Health Services, Inc.*, No. 10-CV-1019, 2010 WL 5391315, at *11 (M.D. Pa. Nov. 22, 2010)(*West*'s rationale extends to a private physician to whom the inmate was referred for outside medical treatment)(magistrate judge's report)(report adopted by the district court at 2010 WL 5391188, dated Dec. 22, 2010). *But see Fullman*, 2007 WL 257617 at *2 (private physician does not act under color of state law if he does not provide medical care on the prison grounds).

As noted, Defendant's second argument is that a consulting physician does not act under color of state law when he is not vested with state authority to provide essential medical care to inmates. In Defendant's view, he had no responsibility to provide such care. Instead, he was only obligated to make a recommendation on how best to fix Plaintiff's jaw. We reject this argument because it bears on the merits of the Eighth Amendment claim, whether Defendant was deliberately indifferent to Plaintiff's serious medical needs, rather than on Defendant's status as a state actor. *Carl*, 763 F.3d at 597.

We conclude Dr. Agarwal was acting under color of state law during his one-time consultation with plaintiff.

### 2. *The Merits of the Eighth Amendment Claim: Whether Dr. Agarwal Was Deliberately Indifferent to Plaintiff's Serious Medical Needs*

As noted above, an Eighth Amendment medical claim requires a plaintiff to prove two things: (1) that the defendant had a subjective state of mind indicating he was deliberately indifferent to the plaintiff's medical needs; and (2) that those medical needs were objectively serious. *Pearson*, 850 F.3d at 534.

In moving for summary judgment, Defendant does not argue that Plaintiff's broken jaw was not an objectively serious need. Instead, he argues that the evidence fails to show that he was deliberately indifferent to Plaintiff's serious medical needs.

As alleged in the second amended complaint, Plaintiff's claims against Dr. Agarwal are that he failed to: (1) ensure a timely operation on his jaw; (2) provide pain medication; and (3) provide a soft diet. Defendant argues that these claims fail because the undisputed evidence shows he had only a limited role in treating Plaintiff, as Dr. Long testified. That role was limited to a recommendation for the care of Plaintiff's broken jaw, and he satisfied it by recommending that Plaintiff be seen by an oral surgeon. Defendant had no responsibility for scheduling surgery, ordering pain medication, or ordering a soft diet. The latter three medical concerns were instead the responsibility of the prison. Dr. Agarwal also relies on the evidence showing that Plaintiff received continual medical care at the prison infirmary both before and after Plaintiff's August 5, 2010, consultation with Defendant. Citing *Rhines v. Bledsoe*, 388 F. App's 225, 227 (3d Cir.

-23-

2010)(nonprecedential), Defendant argues this continual medical care shows there was no deliberate indifference in the care he offered Plaintiff.

In opposition, Plaintiff argues that Dr. Agarwal's deliberate indifference is supported by the following. First, Dr. Agarwal is an ear, nose and throat specialist, which would have "hampered his ability to properly diagnose Tenon given the referral and X-ray report." (Doc. 118, Pl.'s Br. in Opp'n at p. 5). Second, Dr. Agarwal does not treat fractured mandibles, and he has not read fractured mandibles for fifteen years, but Defendant accepted the referral despite these deficiencies. The "lack of proper qualifications creates an inference that the treatment rendered was insufficient." (*Id.*). Third, "Dr. Agarwal's admissions and deposition testimony support an inference that he was aware of a risk that he was not qualified to handle the type of medical issue that Plaintiff Tenon had, yet" continued "to treat him without referring him further to the right type of specialist." (*Id.*).

Plaintiff's arguments do not persuade us. The first two arguments only go to the risk that Dr. Agarwal would commit medical malpractice, which is not sufficient to show deliberate indifference. Additionally, as part of the second argument, Plaintiff points out that Dr. Agarwal accepted the referral even though he was not experienced in treating fractured jaws. However, there is no evidence in the record that Dr. Agarwal knew the specific purpose of the referral before Plaintiff brought the pertinent medical records with him to the consultation. The third argument, although framed in the language of deliberate indifference, goes not to a substantial risk of serious harm to the inmate, but to

the risk that Defendant was not qualified to treat or diagnose the injury, which again relates only to medical malpractice.  Further, Defendant did not continue to treat Plaintiff but referred him to an oral surgeon.

Plaintiff also claims that Dr. Agarwal exhibited deliberate indifference by failing to examine the fracture on the left side of Plaintiff's jaw even though the August 2, 2010, X-ray report indicated there was a left-side fracture.  Plaintiff says Defendant ignored the report, examined the right side of the jaw, and diagnosed a fracture on the right side.

We reject this argument.  As Defendant argues, the evidence does not show that he ignored the report or only examined the right side of the jaw.  Instead, Defendant examined both sides of the jaw, as Plaintiff admits.  (Doc. 119, Pl.'s counterstatement of material facts ¶ 16).  Nor did Defendant ignore the X-ray report.  He instead noted in the consultation record that the report had concluded there was a fracture on the left side, although he himself had decided there was a right-side fracture.

Plaintiff also claims that Dr. Agarwal was deliberately indifferent when his recommendation for referral to an oral surgeon failed to note that timeliness was an issue for surgery on the jaw, even though Defendant acknowledged that the nature of the fracture dictates the timing of the surgery.  Plaintiff also relies on Dr. Panchal's expert report, which indicates, according to Plaintiff, that "the delay was contrary to the appropriate standard of care and that [surgery] should have been scheduled as soon as possible."  (Doc. 118, Pl.'s Br. in Opp'n at p. 6).  Plaintiff relies on the principle that

deliberate indifference can be shown when "necessary medical treatment is delayed for non-medical reasons." *Pearson*, 850 F.3d at 538.[4]

We reject this claim. First, Plaintiff cannot rely on Dr. Agarwal's acknowledgment that the timing of the surgery depends on the nature of the fracture because Dr. Agarwal did not make this acknowledgment. Defendant said the nature of the fracture dictates how soon the oral surgeon should see the patient, not how soon surgery should be performed. We also note here that, in any event, Dr. Long did follow Dr. Agarwal's recommendation and sought referral to an oral surgeon, and on his own, noted that it should be "soon."

Nor can Plaintiff rely on his expert's report to establish deliberate indifference. The report opines that management of Plaintiff's "complex bilateral mandibular fractures was not in a timely fashion," and that "[a]cute fractures of the mandible are generally treated as soon as possible." It also observes that the "fracture was repaired approximately seven weeks after" the jaw was broken. Dr. Agarwal is not identified in the report, and although his consultation is part of the narrative, his conduct is not criticized. The report therefore cannot be a basis for a deliberate indifference claim against Dr. Agarwal.

We turn now to Plaintiff's deliberate indifference claims that Dr. Agarwal refused to prescribe him pain medication and a soft diet. On these claims, as noted,

_____

[4] Plaintiff also argues that deliberate indifference is shown by Defendant's "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). But there is no evidence that Defendant engaged in persistent conduct. Instead, he saw Plaintiff at a one-time consultation.

Defendant argues that they lack merit because the undisputed evidence shows he was not responsible for addressing these concerns. His role in Defendant's care was limited to recommending how his jaw could be fixed. Since Defendant had no responsibility for these medical issues, he could not have been deliberately indifferent to them.

We disagree that Plaintiff has produced no evidence that Defendant's role in Plaintiff's care did not extend to Plaintiff's complaints of pain or his need for a soft diet. As noted, the consultation was performed pursuant to DOC policy 13.2.1, Access to Health Care Procedures Manual, Section 6.n.2.b.vi and vii. That section authorizes "off-site specialty consultations." The section anticipates the specialist will record his findings and recommendations and that a review would occur by prison personnel of any recommendations by the specialist requiring immediate attention. Plaintiff has therefore presented evidence from which a reasonable jury could conclude, despite Dr. Agarwal's and Dr. Long's testimony to the contrary, that the scope of Dr. Agarwal's consultation extended to pain medication and a soft diet.

Nonetheless, we will grant Defendant summary judgment on those claims. Regardless of whether Dr. Agarwal could have treated these concerns, as a doctor seeing Plaintiff on a one-time consultation, his belief that it was not his job to treat these issues, and that prison medical personnel were available to address these concerns, defeats the deliberate indifference claim against him. Dr. Agarwal could not have been

aware of facts from which he could infer a serious risk of harm to Plaintiff when it would have appeared to him that Plaintiff could have gotten relief from prison employees.[5]

### C.  *The Claim Against Dr. Long*

In moving for summary judgment, Dr. Long makes the following arguments. First, there is no deliberate indifference because the evidence shows Plaintiff received ongoing care for his jaw, his ankle and his diabetes from the date he broke his jaw until his transfer to SCI-Pittsburgh.  During that time, Plaintiff was also prescribed three different kinds of pain medication. Additionally, when recommendations were made to him that Plaintiff be seen by outside doctors, Defendant arranged for Plaintiff to be seen by Dr. Agarwal and Dr. Chung.

Second, Dr. Panchel's expert report does not support a deliberate indifference claim against Dr. Long.  The report does state that "acute fractures of the mandible are generally treated as soon as possible," and then concludes this standard was breached "due to significant delay in care."  However, the report is not probative of any deliberate indifference on Dr. Long's part for two reasons.  First, at most it supports a claim of negligence, which is insufficient for a deliberate indifference claim.  Second, it does not identify the party who might have violated the standard of care.

In opposition, Plaintiff argues that Dr. Long was deliberately indifferent in regard to surgery for his broken jaw based on the following evidence.  First, Dr. Long sent

---

[5]  In fact, at his deposition, Dr. Agarwal testified that he did not prescribe pain medication because prison employees would know what medications Plaintiff could tolerate or would otherwise have a reaction to.  (Doc. 110-3, ECF p. 38).

Plaintiff to Dr. Agarwal for a consultation even though Dr. Agarwal was an ear, nose and throat doctor, not an oral surgeon. Second, delay in treatment for non-medical reasons supports a deliberate indifference claim. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). Here, Defendant admits that the scheduling of an consultation often depends on the outside physician, and Plaintiff's expert opines that the seven weeks between the injury and the operation was a delay in care. Plaintiff therefore argues that he has a valid deliberate indifference claim under *Durmer* for the delay in the surgery on his jaw.

Plaintiff next argues he has a valid claim for failure to provide him with effective pain medication as the evidence shows Dr. Long failed to respond to his requests for stronger pain medication presented to him in the August 5 and August 19 request slips. Plaintiff further argues that he has a valid claim for failure to provide him with a soft diet, again as Dr. Long failed to respond to the two request slips. Plaintiff supports these claims of deliberate indifference in part under *White*, 897 F.2d at 109 ("persistent conduct in the face of resultant pain and risk of permanent injury" can be deliberate indifference).

We agree with Defendant that Plaintiff has failed to provide sufficient evidence for a reasonable jury to conclude that he has an Eighth Amendment claim for the delay in the surgery. Plaintiff complains that Dr. Long sent him initially to Dr. Agarwal, an ear, nose and throat doctor, not an oral surgeon. But at most, on this record, that appears to be negligence, which is insufficient for a deliberate indifference claim. Plaintiff also argues that since Dr. Long admitted that the scheduling of the consultation depends

on the outside physician, the seven-week delay between the occurrence of the injury and the operation was a delay for non-medical reasons under *Durmer*.  We disagree.  In *Durmer*, the plaintiff presented a non-medical reason for the defendant physician's delay in providing the treatment at issue, that the physical therapy sought would be a burden and expense on the prison.  991 F.2d at 68.  Plaintiff presents no non-medical reasons for the delay here.

We agree with Plaintiff that his pain medication claim and soft diet claim must go to the factfinder.  His evidence would support a finding that he twice unsuccessfully notified Defendant that he was suffering pain even with the prescribed medication and that he needed a soft diet.  Defendant asserts he never saw the request slips, but that is a question for the factfinder to resolve.

In his reply brief, Defendant contends Plaintiff's pain medication claim is that he was not provided the proper pain medication and this represents a mere disagreement about treatment which is not actionable.  We disagree.  Plaintiff's claim is that he was not being given effective pain medication.  On appeal, the Third Circuit recognized this as a valid Eighth Amendment claim.  *Tenon*, 606 F. App'x at 686 (a failure to respond to requests for stronger pain medication is a valid Eighth Amendment claim).  *See also Kennedy v. SCI Rockview Employees & Medical Employees*, No. 10-CV-1764, 2010 WL 4853959, at *4 (M.D. Pa. Nov. 22, 2010)(mere disagreement about pain management is not an Eighth Amendment claim, but a claim that prison officials failed to respond to a complaint that pain medication was ineffective is an Eighth

Amendment claim).  As noted above, Dr. Long's assertion that he never saw the request slips has to be presented to the factfinder.

In his reply brief, Defendant argues that there is no evidence that he needed to cosign physician assistant Mahute's July 29, 2010, soft diet order form or that he did anything to prevent Plaintiff from receiving a soft diet.  However, Dr. Long testified that the normal procedure was for him to cosign such order forms before they were implemented by the DOC.

In his reply brief, Dr. Long also argues that his cosigning an August 13, 2010, dietary order form authorizing an enhanced evening snack bag for Plaintiff indicates he was not deliberately indifferent to Plaintiff's serious medical needs. However, we deal here with Eighth Amendment claims concerning pain medication and a soft diet, not with an Eighth Amendment claim dealing with a diabetic's dietary needs.

VI.   *Conclusion*

We will issue an order granting defendant Dr. Agarwal's motion for summary judgment.  We will grant defendant Dr. Long's motion for summary judgment on the claim based on the delay in surgery but deny it on the pain medication claim and the soft diet claim.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: April 12, 2017